| | |
|---|---|
| DISTRICT COURT,<br>LARIMER COUNTY, COLORADO<br>201 LaPorte Avenue, Suite 100<br>Ft. Collins, CO 80521<br><br>**PLAINTIFF:** BRIAN HOLTSCLAW, Individually and for Others Similarly Situated<br><br>**v.**<br><br>**DEFENDANT:** STAKE CENTER LOCATING, LLC | DATE FILED: December 13, 2023 11:02 AM<br>FILING ID: 169EE42E52516<br>CASE NUMBER: 2023CV31012<br><br><br><br><br>Δ   COURT USE ONLY   Δ |
| Attorneys for Plaintiff:<br><br>Brian D. Gonzales, Atty. Reg. # 29775<br>**BRIAN D. GONZALES, PLLC**<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Phone: (970) 214-0562<br>BGonzales@ColoradoWageLaw.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:    (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:    (713) 877-8065<br>rburch@brucknerburch.com<br><br>*Pro hac vice applications forthcoming* | Case Number:<br><br><br><br><br><br>Ctrm/Div: |
| **ORIGINAL CLASS ACTION COMPLAINT & JURY DEMAND** | |

### SUMMARY

1.    Brian Holtsclaw ("Holtsclaw") brings this class action to recover unpaid wages and other damages from Stake Center Locating, LLC ("SCL").

2.    SCL employed Holtsclaw as one of its Hourly Utility Locators (defined below) in Colorado.

3.    Holtsclaw and the other Hourly Utility Locators regularly work more than 40 hours in a workweek and/or 12 hours in a day.

4.    But SCL does not pay Holtsclaw and its other Hourly Utility Locators for all the hours they work.

5.    Instead, SCL requires Holtsclaw and the other Hourly Utility Locators to perform significant compensable work "off the clock" without pay.

6.    For example, SCL requires Holtsclaw and the other Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks" (SCL's "meal break policy").

7.    SCL thus does not pay Holtsclaw and its other Hourly Utility Locators for that time.

8.    But Holtsclaw and the other Hourly Utility Locators do not actually receive *bona fide* meal breaks.

9.    Instead, Holtsclaw and the other Hourly Utility Locators are forced to perform their regular job duties "off the clock" during their unpaid "meal breaks" to meet SCL's strict productivity requirements.

10.    SCL's uniform meal break policy therefore violates the Colorado Wage Claim Act ("CWCA"), the Colorado Minimum Wage Act ("CMWA"), and their implementing regulations, the Colorado Overtime and Minimum Pay Standards Orders ("COMPS Order"), by depriving Holtsclaw and the other Hourly Utility Locators of overtime wages for all overtime hours worked.

11.    SCL's uniform meal break policy further violates the CWCA, CMWA and COMPS Order by depriving Holtsclaw and the other Hourly Utility Locators of all their earned wages for all hours worked.

12.    And SCL's uniform meal break policy further violates the CWCA, CMWA and COMPS Order by failing to ensure Holtsclaw and the other Hourly Utility Locators received all required meal and rest breaks during their shifts and failing to pay them minimum and overtime wages for missed breaks.

13.    Similarly, SCL prohibits Holtsclaw and the other Hourly Utility Locators from clocking in for their shifts until they arrive at their first assigned ticket; and SCL requires Holtsclaw and the other Hourly Utility Locators to clock out for their shifts when they leave their last assigned ticket (SCL's "ticket to ticket policy").

14.     But to meet SCL's strict productivity requirements, Holtsclaw and the other Hourly Utility Locators are forced to perform their regular utility locating duties "off the clock" before their first assigned ticket and after their last assigned ticket.

15.     Holtsclaw and the Hourly Utility Locators are thus not paid for the time they spend performing this pre- and post-ticket work "off the clock."

16.     SCL's uniform "ticket to ticket" policy violates the CWCA, CMWA, and COMPS Order by depriving Holtsclaw and the other Hourly Utility Locators of overtime wages for all overtime hours worked.

17.     Likewise, SCL's uniform "ticket to ticket" policy violates the CWCA, CMWA and COMPS Order by depriving Holtsclaw and the other Hourly Utility Locators of all their earned wages for all hours worked.

18.     In addition to depriving Holtsclaw and the other Hourly Utility Locators of pay for their time worked "off the clock," SCL also fails to pay them overtime wages at the proper premium rate.

19.     Specifically, SCL pays Holtsclaw and the other Hourly Utility Locators taxable "auto pay" allowances, which SCL intentionally excludes when calculating their regular rates of pay for overtime purposes (SCL's "auto pay policy").

20.     Thus, SCL's uniform auto pay policy violates the CWCA, CMWA, and COMPS Order by depriving Holtsclaw and the other Hourly Utility Locators of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the hours they work over 40 in a week or 12 in a day.

## JURISDICTION & VENUE

21.     This Court has subject matter jurisdiction pursuant to COLO. CONST. ART. VI § 9(1) because this case arises under Colorado law, and SCL's violative conduct occurred in Colorado.

22.     This Court has specific personal jurisdiction over SCL based on SCL's substantial operations in Colorado and its substantial contacts with, and conduct directed toward, Colorado that form the basis of this class action. C.R.S. § 13-1-124.

23.     Specifically, SCL employed Holtsclaw and the other Hourly Utility Locators in Colorado and failed to pay them earned wages and proper overtime wages for their work performed in Colorado.

24.     Venue is proper pursuant to C.R.C.P. 98(c) because SCL can be found in Larimer County, and a substantial part of the events or omissions giving rise to this action occurred in Larimer County.

25.     Specifically, SCL maintains an office in Loveland, Colorado, and Holtsclaw primarily worked for SCL in Larimer County.

26.     Finally, this matter is properly in this Court because: (1) the aggregate amount in controversy is under $5 million; (2) the size of Holtsclaw proposed class is fewer than 100 individual members; (3) Holtsclaw's proposed class includes only Colorado citizens; (4) Holtsclaw's and the other Hourly Utility Locators' claims arise under Colorado law, rather than any federal statute; and (5) there is no embedded federal question or issue in Holtsclaw's and the other Hourly Utility Locators' claims arising solely under Colorado law

**PARTIES**

27.     Holtsclaw is an adult individual residing in Fort Collins, Larimer County, Colorado.

28.     Holtsclaw worked for SCL as a Utility Locator in and around Fort Collins, Larimer County, Colorado from approximately April 2021 until November 2021.

29.     At all relevant times, Holtsclaw was SCL's covered "employee" within the meaning of the CWCA, CMWA, and COMPS Order. *See* C.R.S. § 8-4-101(5); C.C.R. 1103-1(1.5).

30.     Throughout his employment, SCL classified Holtsclaw as non-exempt and paid him on an hourly basis.

31.     Throughout his employment, SCL subjected Holtsclaw to its uniform, illegal meal break policy, requiring him to clock out for 30 minutes a day for so-called "meal breaks."

32.     But throughout his employment, Holtsclaw did not actually receive *bona fide* meal breaks.

33.     Nor did Holtsclaw receive 10-minute rest periods (or minimum wages and overtime pay for his missed meal and rest breaks) throughout his employment.

34.     Further, SCL subjected Holtsclaw to its uniform, illegal "ticket to ticket" policy, prohibiting him from clocking in for his shifts until he arrived at his first assigned ticket and requiring him to clock out when he left his last assigned ticket.

35.     But throughout his employment, SCL required Holtsclaw to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

36.     Finally, throughout his employment, SCL paid Holtsclaw taxable "auto pay" allowances that SCL intentionally excluded when calculating his regular rate for overtime purposes.

37.     Holtsclaw brings this class action on behalf of himself and other similarly situated hourly, non-exempt SCL Utility Locators in Colorado who are subject to SCL's illegal rest/meal break, "ticket to ticket," and/or auto pay policies.

38.     SCL requires each of these Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

39.     But these Utility Locators do not actually receive *bona fide* meal breaks.

40.     Nor do these Utility Locators actually receive *bona fide* 10-minute rest periods every 4 hours – or major fractions thereof –  they work (or payment for missed meal and rest breaks).

41.     Likewise, SCL prohibits each of these Utility Locators from clocking in until they arrive at their first assigned ticket and requires them to clock out when they leave their last assigned ticket.

42.     But SCL also requires each of these Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

43.     Finally, SCL pays each of these Utility Locators taxable auto pay allowances that SCL intentionally excludes when calculating their regular rates of pay for overtime purposes.

44.     Thus, SCL uniformly deprives these Utility Locators of overtime wages at the proper premium rate—based on all renumeration received—for all hours worked after 40 in a workweek or 12 in a day, including those worked "off the clock," in violation of the CWCA, CMWA and COMPS Order.

45.     Likewise, SCL uniformly deprives these Utility Locators of earned wages for all hours worked, including those worked "off the clock," in violation of the CWCA, CMWA and COMPS Order.

46.     Finally, SCL uniformly deprives these Utility Locators of *bona fide* meal and rest breaks and minimum and overtime wages for missed breaks in violation of the CWCA, CMWA and COMPS Order.

47.     The putative class of similarly situated employees is defined as:

> **All Colorado citizens who worked for SCL as an hourly Utility Locator in Colorado at any time during the past 6 years to final judgment in this matter ("Hourly Utility Locators").**

48.     The Hourly Utility Locators can be readily ascertained from SCL's business and personnel records.

49.     SCL is a Utah corporation headquartered in Greensboro, North Carolina.

50.     SCL is registered to do business in Colorado.

51.     Indeed, SCL maintains an office in Loveland, Colorado.

52.     At all relevant times, SCL transacted and conducted substantial business in Colorado.

53.     At all relevant times, SCL was subject to the CWCA, CMWA, and COMPS Order because SCL was (and is) an "employer" within the meaning of the CWCA, CMWA and COMPS Order. *See* C.R.S. § 8-4-101(6); C.C.R. 1103-1(1.6).

54.    SCL may be served through its registered agent: **Corporation Service Company, 1900 West Littleton Boulevard, Littleton, Colorado 80120**.

### FACTS

55.    SCL bills itself as a utility "locating powerhouse"[1] that provides "utility locating services [to utility owners and operators] across the country[,]"[2] including in Colorado.

56.    To meet its business objectives, SCL hires Utility Locators (including Holtsclaw and the other Hourly Utility Locators) to provide underground utility locating services to its clients in Colorado.

57.    SCL uniformly classifies Holtsclaw and its other Hourly Utility Locators as non-exempt and pays them on an hourly basis.

58.    Holtsclaw and the other Hourly Utility Locators regularly work more than 40 hours a week or 12 in a day.

59.    But SCL does not pay Holtsclaw and its other Hourly Utility Locators for all their hours worked.

60.    Instead, SCL uniformly subjects Holtsclaw and its other Hourly Utility Locators to its illegal meal break and "ticket to ticket" policies and forces these employees to perform compensable work "off the clock" during their unpaid "meal breaks" and before and after clocking in and out for their shifts.

61.    Likewise, SCL does not pay Holtsclaw and its other Hourly Utility Locators overtime at the proper premium rate.

62.    Instead, SCL uniformly subjects Holtsclaw and its other Hourly Utility Locators to its illegal auto pay policy, paying them taxable auto pay allowances that SCL intentionally excludes when calculating their regular rates of pay for overtime purposes.

63.    While exact job duties and precise locations may differ, Holtsclaw and the other Hourly Utility Locators are subject to SCL's same or similar illegal policies—SCL's rest/meal break, "ticket to ticket," and auto pay policies—for similar work.

64.    For example, Holtsclaw worked for SCL as a Utility Locator in and around Fort Collins, Larimer County, Colorado from approximately April 2021 until November 2021.

65.    Holtsclaw was SCL's hourly employee.

66.    As a Utility Locator, Holtsclaw's primary responsibilities included locating network lines for gas, electrical, cable, and communications companies (SCL's clients) and identifying whether the utility owner's underground utilities conflict with proposed excavation locations.

---

[1] https://www.stakecenter.com/ (last visited December 11, 2023).
[2] https://www.stakecenter.com/service-areas/ (last visited December 11, 2023).

67.    Throughout his employment, SCL required Holtsclaw to record his work time through its uniform timekeeping and ticketing system.

68.    Throughout his employment, Holtsclaw regularly worked more than 40 hours a week or 12 in a day.

69.    Indeed, Holtsclaw typically worked 10 hours a day for 6 to 7 days a week (or 60 to 70 hours a week).

70.    But throughout his employment, SCL subjected Holtsclaw to its illegal meal break policy.

71.    Specifically, SCL required Holtsclaw to clock out for 30 minutes a day for so-called "meal breaks," regardless of whether he actually received a *bona fide* meal break.

72.    But Holtsclaw did not actually receive *bona fide* meal breaks.

73.    Instead, to meet SCL's strict productivity requirements, Holtsclaw was forced to perform his regular utility locating duties "off the clock" during his unpaid "meal breaks."

74.    Similarly, to meet SCL's strict productivity requirements, Holtsclaw did not receive *bona fide* 10-minute rest periods for every 4 hours - or major fractions thereof - he worked.

75.    But SCL failed to pay Holtsclaw minimum and overtime wages for his missed rest and meal breaks.

76.    Further, throughout his employment, SCL also subjected Holtsclaw to its illegal "ticket to ticket" policy.

77.    Specifically, SCL prohibited Holtsclaw from clocking in for his shifts until he arrived at his first assigned ticket and required him to clock out when he left his last assigned ticket.

78.    But SCL also required Holtsclaw to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

79.    Specifically, to meet SCL's strict productivity requirements, Holtsclaw was forced to review tickets, route plan, make/take call from SCL's clients, load his utility locating equipment into his company-issued vehicle, and drive to his first assigned ticket "off the clock" and without pay.

80.    Likewise, after clocking out upon completing his last assigned ticket, Holtsclaw was forced to drive home, perform truck audits on his company-issued vehicle, unload his utility locating equipment from his company-issued vehicle, review tickets, route plan, make/take call from SCL's clients, and respond to any emergencies "off the clock" and without pay.

81.    This pre- and post-ticket "off the clock" work took Holtsclaw approximately 2 to 3 hours a day (or 12 to 21 hours a week).

82.    But under SCL's illegal "ticket to ticket" policy, SCL did not pay Holtsclaw for his mandatory and necessary pre- and post-ticket "off the clock" work.

83.     So, rather than receiving earned wages for all his hours worked and overtime wages for all his hours worked over 40 in a workweek or 12 in a day, SCL only paid Holtsclaw for the time he worked between his arrival at his first assigned ticket and his departure from his last assigned ticket, less his 30-minute on-duty "meal break," in violation of the CWCA, CMWA, and COMPS Order.

84.     Finally, throughout his employment, SCL also subjected Holtsclaw to its illegal auto pay policy.

85.     Specifically, SCL paid Holtsclaw taxable auto pay allowances that SCL intentionally excluded when calculating his regular rate of pay for overtime purposes.

86.     Thus, under SCL's illegal auto pay policy, Holtsclaw did not receive overtime at rates not less than 1.5 times his regular rate of pay—based on all renumeration received—for his hours worked over 40 in a workweek or 12 in a day in violation of the CWCA, CMWA, and COMPS Order.

87.     SCL subjects its other Hourly Utility Locators according to the same illegal rest/meal break, "ticket to ticket," and auto pay policies it imposed on Holtsclaw.

88.     Like Holtsclaw, SCL pays its other Hourly Utility Locators on an hourly basis.

89.     Like Holtsclaw, SCL requires its other Hourly Utility Locators to report their hours worked to SCL for approval via SCL's uniform timekeeping and ticketing system.

90.     SCL's records show that, like Holtsclaw, the other Hourly Utility Locators regularly work more than 40 hours a week or 12 in a day.

91.     Indeed, like Holtsclaw, the other Hourly Utility Locators typically work 10 hours a day for 6 to 7 days a week (or 60 to 70 hours a week).

92.     SCL uniformly subjects its other Hourly Utility Locators to the same policies, procedures, and strict operational and productivity requirements that it imposed on Holtsclaw.

93.     Indeed, SCL uniformly requires Holtsclaw and the other Hourly Utility Locators to complete their work tickets in a timely manner per SCL's policy.

94.     And SCL closely supervises and tracks Holtsclaw's and the other Hourly Utility Locators' productivity to ensure they comply with SCL's uniform expectations.

95.     In fact, because labor costs are SCL's greatest expense, SCL closely monitors the hours and overtime Holtsclaw and the other Hourly Utility Locators work through its uniform ticketing system.

96.     And SCL uniformly pressures and expects Holtsclaw and the other Hourly Utility Locators to complete as many tickets as possible.

97.     But SCL consistently instructs Holtsclaw and the other Hourly Utility Locators to keep their recorded hours worked at 40 or below.

98.     Thus, like Holtsclaw, the other Hourly Utility Locators are forced to perform compensable work "off the clock" during their meal breaks and before and after their shifts without pay to complete their heavy workloads in satisfaction of SCL's strict productivity requirements.

99.     Indeed, like Holtsclaw, SCL subjects its other Hourly Utility Locators to its illegal meal break policy.

100.    Specifically, SCL requires Holtsclaw and the other Hourly Utility Locators to "clock out" for 30 minutes a day for so-called "meal breaks."

101.    SCL requires Holtsclaw and the other Hourly Utility Locators to "clock out" for 30 minutes a day regardless of whether they receive a full, uninterrupted meal break.

102.    If Holtsclaw and the other Hourly Utility Locators do not "clock out" for 30 minutes a day to account for these so-called "meal breaks," SCL will not approve their timesheets.

103.    In fact, if Holtsclaw and the other Hourly Utility Locators fail to "clock out" and record a 30-minute "meal break," they would be written up and disciplined by SCL's management.

104.    SCL simply assumes Holtsclaw and the other Hourly Utility Locators actually receive *bona fide* meal breaks.

105.    But Holtsclaw and the other Hourly Utility Locators do not actually receive *bona fide* meal breaks.

106.    Instead, to complete their assigned heavy workloads in accordance with SCL's uniform, strict operational and productivity requirements (and SCL's close monitoring of the same), Holtsclaw and the other Hourly Utility Locators are routinely forced to perform their regular utility locating duties and responsibilities during their unpaid "meal breaks."

107.    Specifically, during their unpaid "meal breaks," Holtsclaw and other Hourly Utility Locators regularly perform work-related tasks, such as completing tickets, driving from one ticket to another, taking/making calls to SCL's clients, and route planning.

108.    The "off the clock" work Holtsclaw and the other Hourly Utility Locators perform during their "meal breaks" is similar if not the same.

109.    Because of these constant work-related tasks, Holtsclaw and the other Hourly Utility Locators are not free to engage in personal activities during their unpaid "meal breaks."

110.    Thus, Holtsclaw and the other Hourly Utility Locators routinely spend their unpaid "meal breaks" on-duty and performing work "off the clock" for SCL's—not their own—predominant benefit.

111.    This unpaid "off the clock" work is compensable under Colorado law because SCL knew, or should have known, that: (1) Holtsclaw and the other Hourly Utility Locators were performing unpaid work during their "off the clock" meal breaks; (2) they were interrupted or subject to interruptions with work duties during any attempted meal break; (3) they were not completely relieved of all duties during their meal breaks; (4) they entirely skipped their meal breaks due to work

demands; (5) their meal breaks were less than 30 consecutive minutes; (6) they were not free to engage in personal activities during their meal break because of constant work interruptions; and/or (7) they spent their unpaid meal breaks performing their regular utility locating duties for SCL's predominant benefit.

112.    SCL fails to exercise its duty as Holtsclaw's and the other Hourly Utility Locators' employer to ensure these employees are not performing work that SCL does not want performed "off the clock" during their unpaid "meal breaks."

113.    And SCL knows Holtsclaw and the other Hourly Utility Locators regularly work "off the clock" during their unpaid "meal breaks."

114.    Specifically, using timecard details and GPS data tracked by SCL's uniform ticketing system, SCL can easily determine whether Holtsclaw and the other Hourly Utility Locators are working "off the clock" during their unpaid "meal breaks."

115.    In fact, SCL management level employees can easily determine if Holtsclaw and the other Hourly Utility Locators are clocked out for lunch and/or if their vehicles are moving (and, therefore, they are working or traveling between jobsites).

116.    Despite accepting the benefits, SCL does not pay Holtsclaw and its other Hourly Utility Locators for the compensable work they perform "off the clock" during their unpaid "meal breaks."

117.    Thus, under SCL's illegal meal break policy, Holtsclaw and the other Hourly Utility Locators are denied overtime pay for their on-duty "meal breaks" during workweeks in which they work over 40 hours or days in which they work over 12 hours in willful violation of the CWCA, CMWA, and COMPS Order.

118.    Likewise, under SCL's illegal meal break policy, Holtsclaw and the other Hourly Utility Locators are denied earned wages for the time they spend performing compensable work "off the clock" during their on-duty "meal breaks" in willful violation of the CWCA, CMWA and COMPS Order.

119.    And SCL fails to pay Holtsclaw and the other Hourly Utility Locators minimum and overtime wages for their missed meal (and rest) breaks in violation of the CWCA, CMWA and COMPS Order.

120.    Further, like Holtsclaw, SCL also prohibits its other Hourly Utility Locators from clocking in for their shifts until they arrive at their first assigned ticket and requires them to clock out when they leave their last assigned ticket.

121.    But like Holtsclaw, SCL also requires its other Hourly Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

122.    Specifically, before clocking in for their shifts, the other Hourly Utility Locators (like Holtsclaw) are forced to review tickets, route plan, make/take call from SCL's clients, load their utility

locating equipment into their company-issued vehicle, and drive to their first assigned ticket "off the clock" (without pay) to meet SCL's strict productivity requirements.

123.    Likewise, after clocking out for their shifts, the other Hourly Utility Locators (like Holtsclaw) are forced to drive home, perform truck audits on their company-issued vehicle, unload their utility locating equipment from their company-issued vehicle, review tickets, route plan, make/take call from SCL's clients, and respond to any emergencies "off the clock" (without pay) to meet SCL's strict productivity requirements.

124.    And like Holtsclaw, the other Hourly Utility Locators spend approximately 2 to 3 hours a day (or 12 to 21 hours a week) performing this compensable pre- and post-ticket "off the clock" work without pay.

125.    SCL controls Holtsclaw's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work, and such work is undertaken primarily for the benefit of SCL's business to provide utility locating services to its clients.

126.    Further, this mandatory pre- and post-ticket "off the clock" work is necessary to the principal work Holtsclaw and the other Hourly Utility Locators perform as SCL Utility Locators.

127.    Indeed, Holtsclaw and the other Hourly Utility Locators cannot provide utility locating services to SCL's clients in accordance with SCL's strict productivity requirements unless they perform this pre- and post-ticket "off the clock" work.

128.    In other words, Holtsclaw's and the other Hourly Utility Locators' mandatory pre- and post-ticket "off the clock" work is a fundamental requirement of their jobs as SCL Utility Locators.

129.    Indeed, SCL could not eliminate this pre- and post-ticket "off the clock" work altogether without impairing Holtsclaw's and the other Hourly Utility Locators' ability to perform their utility locating work for SCL.

130.    Rather, this mandatory pre- and post-ticket "off the clock" work is integral and indispensable to Holtsclaw's and the other Hourly Utility Locators' work as SCL Utility Locators.

131.    Thus, Holtsclaw and the other Hourly Utility Locators routinely perform this mandatory pre- and post-ticket "off the clock" work for SCL's—not their own—predominant benefit.

132.    And SCL knows Holtsclaw and its other Hourly Utility Locators perform this compensable pre- and post-ticket work "off the clock" because SCL requires them to do so.

133.    Indeed, SCL closely monitors and tracks Holtsclaw and the other Hourly Utility Locators work time and locations via its company-wide ticketing system to ensure they meet SCL's strict productivity requirements.

134.    Likewise, SCL installs GPS trackers and/or dash cameras on Holtsclaw's and the other Hourly Utility Locators' company-issued vehicles to monitor all their activities, movements, and locations to ensure they complete their heavy workloads in satisfaction of SCL's strict productivity requirements.

135.    And SCL's Human Resources department routinely received complaints from its Hourly Utility Locators that they could not complete their assigned work tickets in under 40 hours each workweek, as SCL required, without working "off the clock" (without pay).

136.    But SCL fails to exercise its duty as Holtsclaw's and the other Hourly Utility Locators' employer to ensure these employees are not performing work that SCL does not want performed "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

137.    Thus, SCL requested, suffered, permitted, or allowed Holtsclaw and its other Hourly Utility Locators to work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

138.    Despite accepting the benefits, SCL does not pay Holtsclaw and its other Hourly Utility Locators for the time they spend performing this compensable work "off the clock."

139.    Thus, under SCL's illegal "ticket to ticket" policy, Holtsclaw and the other Hourly Utility Locators are denied overtime pay for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket during workweeks in which they work over 40 hours or days in which they work over 12 hours in willful violation of the CWCA, CMWA, and COMPS Order.

140.    Likewise, under SCL's illegal "ticket to ticket" policy, Holtsclaw and the other Hourly Utility Locators are denied earned wages for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket in willful violation of the CWCA, CMWA and COMPS Order.

141.    Finally, in addition to willfully depriving these employees of pay for all their hours worked, SCL also subjects its other Hourly Utility Locators to the same illegal auto pay policy it imposed on Holtsclaw.

142.    Specifically, SCL uniformly pays Holtsclaw and its other Hourly Utility Locators a taxable automobile allowance.

143.    SCL includes this automobile allowance in the total taxable amount it pays to Holtsclaw and the other Hourly Utility Locators on each paystub.

144.    As a result, SCL represents to Holtsclaw and the other Hourly Utility Locators that the automobile allowance it pays them constitutes part of their wages.

145.    Likewise, SCL represents to the IRS Holtsclaw's and the other Hourly Utility Locators' automobile allowance constitutes wages.

146.    Thus, SCL knowingly classifies Holtsclaw's and the other Hourly Utility Locators' automobile allowance as wages.

147.    SCL knew that all wages must be considered remuneration for purposes of calculating Holtsclaw's and the other Hourly Utility Locators' overtime rates.

148.    Although SCL classifies this automobile allowance as wages, SCL intentionally excludes Holtsclaw's and the other Hourly Utility Locators' "auto pay" when calculating their regular rates of pay for overtime purposes.

149.    Thus, under SCL's illegal auto pay policy, Holtsclaw and the other Hourly Utility Locators are not paid overtime wages at rates not less than 1.5 times their regular rates of pay—based on all renumeration received—for the hours they work over 40 in a week or 12 in a day in willful violation of the CWCA, CMWA, and COMPS Order.

## CLASS ACTION ALLEGATIONS

150.    Holtsclaw incorporates all other paragraphs by reference.

151.    Holtsclaw brings his claims as a class action on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

152.    Like Holtsclaw, the other Hourly Utility Locators were victimized by SCL's illegal rest/meal break, "ticket to ticket," and auto pay policies.

153.    Other Hourly Utility Locators worked with Holtsclaw and indicated they were paid in the same manner, performed similar work, and were subject to SCL's same illegal rest/meal break, "ticket to ticket," and auto pay policies.

154.    Based on his experience with SCL, Holtsclaw is aware SCL's illegal rest/meal break, "ticket to ticket," and auto pay policies were imposed on the other Hourly Utility Locators.

155.    The putative class of Hourly Utility Locators include more than 40 members.

156.    Thus, the Hourly Utility Locators are so numerous that the joining of all potential class member in one lawsuit is impracticable.

157.    The Hourly Utility Locators are similarly situated in the most relevant respects.

158.    Even if their specific job titles or precise locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a week or 12 in a day.

159.    Therefore, the specific job titles or precise job locations of the various Hourly Utility Locators do not prevent class treatment.

160.    Rather, the Hourly Utility Locators are held together by SCL's uniform rest/meal break, "ticket to ticket," and auto pay policies, which systematically deprived Holtsclaw and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek or 12 in a day.

161.    SCL's failure to pay earned wages and proper overtime wages as required by Colorado wage laws results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Hourly Utility Locators.

162.    SCL's records reflect the number of hours the Hourly Utility Locators recorded they worked each week.

163.    SCL's records also show the number of hours the Hourly Utility Locators actually worked each week.

164.    SCL's records further show it required the Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

165.    SCL's records also show it paid the Hourly Utility Locators taxable automobile allowances that it excluded when calculating their regular rates of pay for overtime purposes.

166.    The back wages owed to Holtsclaw and the other Hourly Utility Locators can therefore be calculated using the same formula applied to the same records.

167.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SCL's records, and there is no detraction from the common nucleus of liability facts.

168.    Therefore, the issue of damages does not preclude class treatment.

169.    Holtsclaw's experiences are therefore typical of the experiences of the other Hourly Utility Locators.

170.    Holtsclaw has no interest contrary to, or in conflict with, the other Hourly Utility Locators.

171.    Like each Hourly Utility Locator, Holtsclaw has an interest in obtaining the unpaid wages owed to them under Colorado law.

172.    Holtsclaw and his counsel will fairly and adequately protect the interests of the other Hourly Utility Locators.

173.    Holtsclaw retained counsel with significant experience in complex class action litigation.

174.    A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

175.    Absent this class action, many Hourly Utility Locators likely will not obtain redress for their injuries, and SCL will reap the unjust benefits of violating Colorado wage laws.

176.    Further, even if some of the Hourly Utility Locators could afford individual litigation against SCL, it would be unduly burdensome to the judicial system.

177.    Indeed, the multiplicity of actions would create a hardship for the Hourly Utility Locators, the Court, and SCL.

178.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Utility Locators' claims.

179.    The questions of law and fact that are common to each Hourly Utility Locator predominate over any questions affecting solely the individual members.

180.    Among the common questions of law and fact are:

a.    Whether SCL engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for 30 minutes a day for "meal breaks," regardless of whether they actually received a *bona fide*, uninterrupted meal break;

b.    Whether SCL engaged in a policy and practice of prohibiting its Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket;

c.    Whether SCL engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for their shifts once they left their last assigned ticket;

d.    Whether SCL knew, or had reason to know, the Hourly Utility Locators were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal breaks" and/or before they arrive at their first assigned ticket and after they leave their last assigned ticket;

e.    Whether SCL's meal break policy deprived the Hourly Utility Locators of overtime pay for all overtime hours worked in violation of the CWCA, CMWA and COMPS Order'

f.    Whether SCL's "ticket to ticket" policy deprived the Hourly Utility Locators of overtime pay for all overtime hours worked in violation of the CWCA, CMWA and COMPS Order;

g.    Whether SCL's meal break policy deprived the Hourly Utility Locators of earned wages for all hours worked in violation of the CWCA, CMWA and COMPS Order;

h.    Whether SCL's "ticket to ticket" policy deprived the Hourly Utility Locators of earned wages for all hours worked in violation of the CWCA, CMWA and COMPS Order;

i.    Whether SCL failed to include all renumeration the Hourly Utility Locators received (including their automobile allowances) when calculating their regular rates of pay for overtime purposes in violation of the CWCA, CMWA and COMPS Order;

    j.    Whether SCL's auto pay policy deprived the Hourly Utility Locators of overtime wages at the premium rate required by the CWCA, CMWA and COMPS Order;

    k.    Whether SCL's decision to not pay the Hourly Utility Locators all their earned wages for all hours worked, including those worked "off the clock," was made in good faith;

    l.    Whether SCL's decision not to pay the Hourly Utility Locators overtime wages for all overtime hours worked, including those worked "off the clock," was made in good faith;

    m.    Whether SCL's decision not to pay the Hourly Utility Locators overtime wages at the proper premium rate—based on *all* renumeration received—was made in good faith; and

    n.    Whether SCL's violations were willful.

181.    Holtsclaw knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

182.    As part of its regular business practices, SCL intentionally, willfully, and repeatedly violated Colorado wage laws with respect to Holtsclaw and the other Hourly Utility Locators.

183.    SCL's illegal rest/meal break, "ticket to ticket," and auto pay policies deprived Holtsclaw and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek or 12 in a day, which they are owed under Colorado law.

184.    Accordingly, all of C.R.C.P. 23's requirements are satisfied, and Holtsclaw's proposed class of Hourly Utility Locators merits certification.

### SCL's VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF COLORADO WAGE LAWS

185.    Holtsclaw incorporates all other paragraphs by reference.

186.    SCL knew it was subject to the CWCA's, CMWA's, and COMPS Order's respective overtime provisions.

187.    SCL knew the CWCA, CMWA, and COMPS Order required it to pay non-exempt employees, including Holtsclaw and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 12 in a workday and 40 in a workweek.

188.    SCL knew the CWCA, CMWA and COMPS Order further required it to pay employees, including Holtsclaw and the other Hourly Utility Locators, all wages earned for all hours of work performed.

189.    SCL knew Holtsclaw and the other Hourly Utility Locators were non-exempt employees entitled to overtime pay.

190.    SCL knew it paid Holtsclaw and the other Hourly Utility Locators on an hourly basis.

191.    SCL knew Holtsclaw and each Hourly Utility Locators worked over 40 hours in at least one workweek during the 3 years before this Complaint was filed because SCL required these employees to record their hours worked using its timeclock and ticketing system.

192.    SCL knew the CWCA, CMWA, and COMPS Order required it to pay employees, including Holtsclaw and the other Hourly Utility Locators, for all hours these employees performed compensable work.

193.    SCL knew that, as Holtsclaw's and the other Hourly Utility Locators' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that SCL did not want performed.

194.    SCL knew Holtsclaw and the other Hourly Utility Locators did not actually receive *bona fide* meal breaks.

195.    SCL knew Holtsclaw and the other Hourly Utility Locators regularly spent their "meal breaks" on-duty and performing their regular utility locating duties "off the clock" for SCL's predominant benefit.

196.    Nonetheless, SCL required Holtsclaw and the other Hourly Utility Locators to clock out for 30 minutes a day to account for so-called "meal breaks."

197.    SCL knew it prohibited Holtsclaw and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket.

198.    Nonetheless, SCL knew Holtsclaw and the other Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket.

199.    Likewise, SCL knew it required Holtsclaw and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket.

200.    Nonetheless, SCL knew Holtsclaw and the other Hourly Utility Locators performed compensable work "off the clock" after they left their last assigned ticket.

201.    SCL knew it controlled Holtsclaw's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work.

202.    SCL knew Holtsclaw's and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was undertaken for SCL's predominant benefit.

203.    SCL knew Holtsclaw's and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was necessary to the principal work these employees performed as SCL Utility Locators.

204. SCL knew Holtsclaw's and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was integral and indispensable to these employees' work as SCL Utility Locators.

205. Thus, SCL knew it requested, suffered, permitted, or allowed Holtsclaw and the other Hourly Utility Locators to work "off the clock" during their "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket.

206. In other words, SCL knew, should have known, or recklessly disregarded whether Holtsclaw and the other the Hourly Utility Locators performed unpaid compensable work "off the clock" during their "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket.

207. Nonetheless, SCL did not pay Holtsclaw and the other Hourly Utility Locators for the compensable work they performed "off the clock" during their "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket.

208. Thus, SCL knew, should have known, or recklessly disregarded whether it failed to pay Holtsclaw and the other Hourly Utility Locators for all the hours they performed compensable work.

209. SCL's decision to require Holtsclaw and the other Hourly Utility Locators to clock out for 30 minutes a day for account for "meal breaks" regardless of whether they actually received *bona fide* meal breaks was neither reasonable, nor was it made in good faith.

210. SCL's decision to prohibit Holtsclaw and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket was neither reasonable, nor was it made in good faith.

211. SCL's decision to require Holtsclaw and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket was neither reasonable, nor was it made in good faith.

212. SCL's failure to pay Holtsclaw and the other Hourly Utility Locators overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

213. Likewise, SCL's failure to pay Holtsclaw and the other Hourly Utility Locators all their earned wages for all hours worked was neither reasonable, nor was its decision not to pay these employees all their earned wages for all hours worked made in good faith.

214. SCL knew the CWCA, CMWA, and COMPS Order required it to include all renumeration employees, including Holtsclaw and the other Hourly Utility Locators, received when calculating their regular rates of pay for overtime purposes.

215. SCL knew it paid Holtsclaw and the other Hourly Utility Locators taxable automobile allowances.

216.   SCL knew Holtsclaw's and the other Hourly Utility Locators' auto pay constituted part of their wages.

217.   Nonetheless, SCL intentionally excluded Holtsclaw's and the other Hourly Utility Locators' auto pay allowances when calculating their regular rates of pay for overtime purposes.

218.   SCL's failure to pay Holtsclaw and the other Hourly Utility Locators overtime wages at the proper premium rate (based on *all* renumeration received) was neither reasonable, nor was its decision to exclude Holtsclaw's and the other Hourly Utility Locators' auto pay when calculating their regular rates for overtime purposes made in good faith.

219.   SCL knowingly, willfully, and/or in reckless disregard carried out its illegal rest/meal break, "ticket to ticket," and auto pay policies that deprived Holtsclaw and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek or 12 in a day in violation of the CWCA, CMWA, and COMPS Order.

220.   SCL knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated Colorado wage laws.

221.   Indeed, SCL has been repeatedly sued previously by employees for failing to pay proper wages in violation of the FLSA and analogous state wage and hour laws, including for the same illegal meal break, "ticket to ticket," and auto pay policies that are the subject of this lawsuit. *See, e.g., Kinsey v. Stake Center Locating, Inc.*, No. 161185/2023 (N.Y. Sup. Ct., New York Cnty.); *Castille v. Stake Center Locating, LLC*, No. D-202-CV-2023-08034 (N.M. 2d Dist. Ct.); *Wolfe v. Stake Center Locating, LLC*, No. 230402591 (P.A. 1st Dist. Ct.); *Loonsfoot v. Stake Center Locating, LLC*, No. 3:23-CV-3171-DWD (S.D. Ill.); *Walker v. Stake Center Locating, LLC*, No. 2:21-CV-00183-JCB (D. Utah).

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA/COMPS ORDER
### (CLASS ACTION)

222.   Holtsclaw incorporates all other paragraphs by reference.

223.   Holtsclaw brings his CWCA overtime claim on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

224.   SCL's conduct violates the CWCA, as implemented by the COMPS Order. *See* C.R.S. §§ 8-4-101, *et seq.*; C.C.R. 1103-1.

225.   At all relevant times, SCL was subject to the CWCA and the COMPS Order because SCL was (and is) an "employer" within the meaning of the CWCA and COMPS Order. *See* C.R.S. § 8-4-101(6); C.C.R. 1103-1(1.6).

226.   At all relevant times, SCL employed Holtsclaw and the other Hourly Utility Locators as its covered "employees" within the meaning of the CWCA and COMPS Order. *See* C.R.S. § 8-4-101(5); C.C.R. 1103-1(1.5).

227.    The COMPS Order requires employers, like SCL, to pay non-exempt employees, including Holtsclaw and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked over 12 in a workday and 40 in a workweek. *See* C.C.R. 1103-1(4.1.1).

228.    Holtsclaw and the other Hourly Utility Locators are entitled to overtime pay under the COMPS Order.

229.    SCL violated, and is violating, the COMPS Order by failing to pay Holtsclaw and the other Hourly Utility Locators overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" during their "meal breaks" and/or before they arrive at their first assigned ticket and after they leave their last assigned ticket. *See* C.C.R. 1103-1(4.1.1). Such overtime wages may be recovered un the CWCA.

230.    SCL's unlawful conduct harmed Holtsclaw and the other Hourly Utility Locators by depriving them of the proper premium overtime wages they are owed.

231.    Accordingly, Holtsclaw and the other Hourly Utility Locators are entitled to recover their unpaid overtime wages and an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000. *See* C.R.S. § 8-109(3); C.C.R. 1103-1(8.1).

232.    Because SCL's failure to pay these overtime wages was willful, SCL is also liable to Holtsclaw and the other Hourly Utility Locators for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

233.    Finally, Holtsclaw and the other Hourly Utility Locators are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.C.R. 1103-1(8.1).

<u>COUNT II</u>

FAILURE TO PAY EARNED WAGES UNDER THE CWCA
(CLASS ACTION)

234.    Holtsclaw incorporates all other paragraphs by reference.

235.    Holtsclaw brings his CWCA earned wages claim on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

236.    SCL's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq.*

237.    At all relevant times, SCL was subject to the CWCA because SCL was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

238.    At all relevant times, SCL employed Holtsclaw and the other Hourly Utility Locators as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

239.    The CWCA requires employers, like SCL, to pay employees, including Holtsclaw and the other Hourly Utility Locators, all wages earned, due, and owing on their regular payday and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

240.    SCL violated, and is violating, the CWCA by failing to pay Holtsclaw and the other Hourly Utility Locators all their wages earned for all the hours of work they performed for SCL's benefit, including the work they performed "off the clock" during their "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket, on their regular payday and/or following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

241.    SCL's unlawful conduct harmed Holtsclaw and the other Hourly Utility Locators by depriving them of the earned wages they are owed.

242.    Accordingly, Holtsclaw and the other Hourly Utility Locators are entitled to recover their unpaid earned wages and an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000. *See* C.R.S. § 8-4-109(3).

243.    Because SCL's failure to pay these earned wages was willful, SCL is also liable to Holtsclaw and the other Hourly Utility Locators for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

244.    Finally, Holtsclaw and the other Hourly Utility Locators are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

<u>COUNT III</u>

FAILURE TO PAY MINIMUM WAGES UNDER THE CMWA/COMPS ORDER
(CLASS ACTION)

245.    Holtsclaw incorporates all other paragraphs by reference.

246.    Holtsclaw brings his CMWA minimum wages claim on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

247.    SCL's conduct violates the CMWA, as implemented by the COMPS Order. *See* C.R.S. §§ 8-6-101, *et seq.*

248.    At all relevant times, SCL was subject to the CMWA because SCL was (and is) an "employer" within the meaning of the CMWA.

249.    At all relevant times, SCL employed Holtsclaw and the other Hourly Utility Locators as its covered "employees" within the meaning of the CMWA.

250.    The CMWA and COMPS Order require employers, like SCL, to pay employees, including Holtsclaw and the other Hourly Utility Locators, no less than the minimum hourly wage for all hours worked, including overtime pay for hours worked in excess of 40 per workweek and/or 12 per day.

251.    SCL violated, and is violating, the CMWA and COMPS Order by failing to pay Holtsclaw minimum wages (including overtime pay) for all hours worked, including those worked "off the clock" and/or during missed meal and rest breaks.

252.    SCL's unlawful conduct harmed Holtsclaw and the other Hourly Utility Locators by depriving them of the minimum wages they are owed.

253.    Accordingly, Holtsclaw and the other Hourly Utility Locators are entitled to recover their unpaid minimum wages and interest.

254.    Finally, Holtsclaw and the other Hourly Utility Locators are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

#### COUNT IV

#### CIVIL THEFT OF WAGES
#### (CLASS ACTION)

255.    Holtsclaw incorporates all other paragraphs by reference.

256.    Holtsclaw brings his civil theft claim on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

257.    At all relevant times, SCL was subject to the CMWA because SCL was (and is) an "employer" within the meaning of the CMWA.

258.    At all relevant times, SCL employed Holtsclaw and the other Hourly Utility Locators as its covered "employees" within the meaning of the CMWA.

259.    SCL knew it failed to pay Holtsclaw and the other Hourly Utility Locators minimum wage because SCL knew (1) Holtsclaw and the other Hourly Utility Locators work "off the clock during their meal breaks and before and after their first and last assigned tickets; and (2) SCL failed to provide breaks and failed to compensate Holtsclaw and the other Hourly Utility Locators *at all* for these missed breaks.

260.    SCL's knowing failure to pay minimum wage under the CMWA constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 8-6-116.

261.    As a result, SCL's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

262.    Accordingly, Holtsclaw and the other Hourly Utility Locators are entitled to treble damages and attorney's fees.

263.    Holtsclaw and the other Hourly Utility Locators are also entitled to costs, statutory interest, and all other relief deemed appropriate by the Court.

#### JURY DEMAND

264.    Holtsclaw demands a trial by jury on all Counts.

22

## RELIEF SOUGHT

WHEREFORE, Holtsclaw, individually and on behalf of the other Hourly Utility Locators, seeks the following relief:

a.  An Order certifying a class action pursuant to C.R.C.P. 23;

b.  An Order appointing Holtsclaw and his counsel to represent the interests of the Hourly Utility Locators;

c.  An Order authorizing prompt notice of this litigation to all Hourly Utility Locators;

d.  An Order finding SCL liable to Holtsclaw and the other Hourly Utility Locators their unpaid overtime wages owed under Colorado law, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

e.  An Order finding SCL liable to Holtsclaw and the other Hourly Utility Locators their unpaid earned wages owed under Colorado law, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000, plus treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater;

f.  An Order finding SCL liable to Holtsclaw and the other Hourly Utility Locators their unpaid minimum wages (including overtime pay) owed under Colorado law, plus interest;

g.  Judgment awarding Holtsclaw and the other Hourly Utility Locators all unpaid earned wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under Colorado law;

h.  An Order awarding attorneys' fees, costs, and expenses;

i.  Pre- and post-judgment interest at the highest applicable rates; and

j.  Such other and further relief as may be necessary and appropriate.

Dated:  December 13, 2023

Respectfully submitted,

**BRIAN D. GONZALES PLLC**

By: */s/ Brian D. Gonzales*
         Brian D. Gonzales
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Phone: (970) 214-0562
bgonzales@coloradowagelaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR HOLTSCLAW &
THE HOURLY UTILITY LOCATORS**